STEPHEN J. WINDHORST, Judge.
In this workers’ compensation matter the employer, Dillard’s, Inc., appeals from both the initial judgment and the amended judgment rendered by the workers’ compensation court. For the reasons that follow, we reverse the judgment rendered on June 11, 2014 and reinstate the judgment rendered on October 8, 2013.
FACTS AND PROCEDURAL HISTORY
On February 4, 2012 Leslie Nichols, claimant, was working as a cosmetologist at the Elizabeth Arden counter at Dillard’s Metairie, Louisiana store. While going to lunch, she slipped and fell on the floor. She did not return to work that day. Instead she went home. The following day she went to the Urgent Care Center. Two days later, she was treated at Concentra, the workers’ compensation doctor.
| During this time period, Ms. Nichols was released to return to work without restriction. On February 20, 2012, Ms. Nichols rode in the Orpheus Parade and attended the Orpheus Ball.
On March 12, 2012, Ms. Nichols sought treatment at Advanced Medical Center. She was going for her second visit, on March 14, 2012, when she was involved in a vehicular accident.
On March 19, 2012, Dillard’s filed a disputed claim for compensation, alleging that the Orpheus events and the motor vehicle accident were intervening and superseding causes of her condition. On March 28, 2013, Ms. Nichols filed her disputed claim for compensation, alleging that her initial injuries from the work-related accident were aggravated by the automobile accident.
The claims were consolidated for trial. After a two-day hearing, the workers’ compensation court rendered judgment on October 8, 2013, awarding Ms. Nichols indemnity and medical benefits from February 4, 2012 until February 10, 2012, when she was released to return to work without restrictions. The workers’ compensation court found that Ms. Nichols failed to show a causal connection between the accident of February 4, 2012 and her disability. The court further found that Ms. Nichols’ participation in the Orpheus festivities was an independent intervening ac *310 tion, and that Ms. Nichols’ disability status did not change until after the motor vehicle accident.
Ms. Nichols filed a motion for new trial. The workers’ compensation court granted the new trial, however no additional evidence was presented and the matter was submitted on memoranda only. On June 11, 2014, the workers’ compensation court rendered judgment amending its previous judgment. In the amended judgment, the court ruled that Dillard’s was liable for both medical and indemnity benefits up to and continuing after the date of judgment. In her reasons for | judgment, the workers’ compensation judge reiterated that claimant failed to show a causal connection between the February 4, 2012 work accident and her disability. The judge also found that the evidence failed to show a connection between Ms. Nichols’ injuries and her participation in the Mardi Gras parade. The court further ruled however that the motor vehicle accident of March 14, 2012 was compensable and that Ms. Nichols became disabled after the automobile accident. The court then concluded that her ongoing disability was causally connected “between the accident of February 4, 2013 [sic], and the accident of March 14, 2012.”
Dillard’s appeals from both judgments. In this appeal, Dillard’s contends that the workers’ compensation judge erred in finding that Ms. Nichols suffered a work-related accident on February 4, 2012. Dillard’s also contends that the workers’ compensation judge erred in granting Ms. Nichols’ motion for new trial, and amending its judgment to award additional and continuing benefits.
DISCUSSION
The Workers’ Compensation Act set up a court-administered system to aid injured workmen by relatively informal and flexible proceedings. Rhodes v. Lewis, 01-1989 (La.5/14/02), 817 So.2d 64. The provisions of the workers’ compensation law are to be interpreted liberally in favor of the worker. Coats v. AT & T, 95-2670 (La.10/25/96), 681 So.2d 1243.
An employee in a compensation action must establish “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031 A. The Workers’ Compensation Act defines an accident as “an unexpected' or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). The employee in a compensation action has |Bthe burden of establishing a work-related accident by a preponderance of the evidence. Marange v. Custom Metal Fabricators, Inc., 11-2678 (La.07/02/12), 93 So.3d 1253, 1257.
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Lopez v. Marques Food Distribs., 12-482 (La.App. 5 Cir. 02/21/13), 110 So.3d 1132, 1136. In reviewing a judgment, the court is compelled to consider the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Id. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Marange, 93 So.3d *311 at 1260 (citing Stobart v. State, DOTD, 617 So.2d 880, 883 (La.1993)).
In its first two assignments of error, Dillard’s argues that the trial court erred in finding that claimant proved by a preponderance of the evidence that the February 4, 2012 fall was an accident within the definition of the Louisiana Workers’ Compensation Act, and in finding that the February 4, 2012 fall caused injury to her left shoulder, neck, lower back, unidentified arm, right elbow and knee. Dillard’s argues that, while it is undisputed that claimant “fell” to the ground on February 4, 2012, the evidence shows that the fall was not “unexpected or unforeseen,” and instead was at the very least deliberate and possibly even staged.
The following evidence was presented at trial. On February, 4, 2012, employee Ebony Brown was nauseous, and she vomited near the exit doors leaving the sales floor. Austin Frazer, a maintenance man, put a chemical on top of the [(¡fluid, and began to clean it up. A yellow caution sign was also put up, and employee Ltonia Forde and manager Mandy Hahlos directed people to walk around the spill. Approximately 20 people successfully navigated the area.
Ms. Nichols was on her way to lunch, and stated that she was not paying attention to her surroundings.[1] Ms. Nichols admitted that she saw the caution sign, and she also saw Ms. Hahlos holding open the door. She saw Ms. Hahlos and another woman talking, but did not pay attention to what they were saying. Ms. Nichols also said that a woman named “Linda” was mopping, but she did not see Linda because she was behind the door. Ms. Nichols said that she stepped in the fluid and slipped and fell. She went down “hard,’’.her body twisted and she hit her right knee, right hip and right elbow. Her left arm “flew out like a rubber band.” She also stated that she was bleeding. Ms. Nichols had undergone orthoscopic surgery on her right knee two years prior to the fall, and she tyas concerned that the fall could damage her knee further. After the fall, she went home and slept. The next day, she went to the Urgent Care Center, and the following day, to Concen-tra Medical Center, the medical provider for workers’ compensation.
Ms. Forde testified that when Ms. Nichols came through the door, she was told that she needed to walk around the spill. At that point, the spill had been halfway mopped and was the size of a sheet, of' paper. Ms. Nichols looked at them, and made eye contact with Ms. Forde. According to Ms. Forde, Ms. Nichols thei) looked at the ground, stepped into the area and slipped. Ms. Nichols went down “gently” on her right side and placed her hand to break her fall. Her right hip, buttocks and right had touched the ground. Then she rolled onto her left side, |7placed her left hand on the ground and got up. Ms. Forde testified that the entire event lasted less than 30 seconds, and that Ms. Nichols kneecap did not hit the ground. Ms. Forde further stated that Ms. Nichols was too far away from the door to grab the doorjamb, and Ms. Forde did not see Ms. Nichols’ left arm fly out. *312 Ms. Forde also did not see any blood on Ms. Nichols’ person.
Ms. Forde testified that when Ms. Nichols returned to work, she asked Ms. Forde if she had seen the accident. When Ms. Forde described what she had seen, Ms. Nichols’ became upset, because it was not what Ms. Nichols wanted her to say.
Ebony Brown testified that after she became ill, she leaned against the wall. By the time Ms. Nichols had approached the area had been cleaned, with only some residue left on the floor. Ms. Brown heard both Ms. Hahlos and Mr. Frazer tell Ms. Nichols not to walk in the residue. Ms. Nichols looked at the residue and then “lightly” fell into it. She fell to her side, hands first. Then she got up and walked off. Ms. Brown did not see Ms. Nichols kneecaps hit the ground. Ms. Nichols did not get anything on her clothing. According to Ms. Brown, Ms. Nichols’ fall looked “staged.”
Ms. Hahlos testified that she was directing people around the area, which was no bigger than 8 inches. She told Ms. Nichols to be careful. Ms. Nichols looked directly at her and then at the ground to see what was there. Ms. Nichols then stepped in the patch. She fell and put her hand out to stop her fall. Her backside hit the ground on one side. She twisted her body over and lifted herself up. Ms. Hahlos stated that Ms. Nichols did not hit the ground hard and that she got up almost immediately. Furthermore, Ms. Nichols’ kneecaps did not hit the floor. Ms. Nichols was given ice for her arm, and asked if she wanted to go to the doctor, |sto which she replied that she did not. Ms. Nichols went home after her fall and returned to work with a full release two days later.
On February 5, 2012, the day after the slip and fall, Ms. Nichols went to the West-bank Urgent Care Center where she was seen by Dr. Douglas Mehaffie. She complained of right knee, right elbow and left shoulder pain. Dr. Mehaffie noted that she had minimal spasm in the neck and palpable spasm of the lower back. Her right elbow appeared normal and her right knee exhibited some swelling. He prescribed Vicodin and Norflex, and recommended a follow-up with an orthopedist.
The following day, Ms. Nichols sought treatment at Concentra Medical Center. She was seen by Dr. Paul Lansing. She related that she fell onto her surgically repaired right knee and injured her left shoulder. Dr. Lansing noted that her examination was normal, and he diagnosed left shoulder strain, right knee contusion and moderate anxiety.
The records of the Bone and Joint Clinic show that Ms. Nichols had right knee ar-throscopy in the summer of 2009. After the fall, on February 7, 2012, she went to the Clinic and was seen by Dr. James Todd. Ms. Nichols told Dr. Todd that she fell on her right knee, and she pulled her shoulder by hanging onto the door jamb with her left arm, trying to break her fall. His examination of both areas revealed no acute findings. He prescribed Naprosyn for inflammation.
Ms. Nichols returned to work, without restrictions, on February 10, 2012.
On February 17, 2012, Ms. Nichols sought treatment at the Westbank Urgent Care Center with complaints of right knee pain and a urinary tract infection. At her request, she was given an injection in her right knee. According to Ms. Nichols, this was a practice of hers prior to participation in certain events.
lflMs. Nichols rode in the Orpheus Parade and attended the Orpheus Ball on February 20, 2012.
On February 24, 2015, Ms. Nichols returned to the clinic and saw Dr. Scott *313 Habetz. She reported that her right knee was improving, but her left shoulder was interfering with daily activity. She reported no other complaints at that time. Dr. Habetz diagnosed left shoulder sprain versus bursitis and right knee contusion. He injected her shoulder and prescribed home exercises. Ms. Nichols did not inform Dr. Habetz that she had ridden in the Orpheus Parade.
Ms. Nichols returned to Dr. Lansing at Concentra Medical Clinic on March 2, 2012 with complaints of knee pain with prolonged standing. Dr. Lansing’s examination was unremarkable. Dr. Lansing prescribed Tramadol for pain and, at Ms. Nichols’ request, issued restrictions of no prolonged standing or walking of longer than 4 hours at a time, and sitting for 20% of the time.
Next, Ms. Nichols sought chiropractic treatment with Advanced Medical Center. She stated that she went to the Clinic because she felt that her injuries were more than a contusion and a strain. Her first visit occurred on March 12, 2012. She was examined by Dr. Dennis Gruwell, a medical doctor specializing in Occupational Medicine. She related the details of her work accident, but did not relate that she had ridden in Orpheus. Dr. Gruwell found her to be awake, alert and a good historian, but with poor memory and concentration. Dr. Gruwell found Cervical Spine sprain/strain, thoracic spine strain/ sprain, lumbar spine Sprain/strain, left shoulder strain, post traumatic headaches, and contusions to the right knee and elbow. Dr. Gruwell opined that it was more probably than not that Ms. Nichols’ injuries were causally related to the work accident, “based on the history received from the patient, the patient’s past medical history and the injury mechanism.”
|inMs. Nichols was involved in a car accident on March 14, 2012 while on her way to Advanced Medical Center. She was again evaluated by Dr. Gruwell on March 19, 2012, at which time he found her unable to work in any capacity. Dr. Gruwell related her injuries to her work accident; however, he had no knowledge of the automobile accident at that time. His final report of May 15, 2012 stated that her motor vehicle accident caused back and shoulder strain/sprain, aggravating her prior injuries.
Ms. Nichols first received chiropractic treatment on the date of the accident, and continued with this treatment until the end of May 2012 when she was referred to the Westbank Orthopedic Clinic. In deposition, Dr. Aaron Theriot, one of the treating chiropractors, testified concerning the treatment administered. On March 14, 2012, Ms. Nichols did not relate that she had been in an automobile accident that morning. The only objective findings were moderate spasm of the cervical spine and mild spasm of the left shoulder, and only her spine was treated. Dr. Theriot stated that a normal sprain would resolve within 4-8 months after injury.
According to Ms. Nichols, she did not obtain relief and she continued to seek treatment, and was eventually treated by Dr. Steck, a neurologist with the Culicchia Neurological Center, who performed cervical surgery. He stated that Ms. Nichols told him that her injuries were caused by her fall. Dr. Steck opined that Ms. Nichols probably could have returned to work 6-8 weeks post surgery. Dr. Steck could not state with reasonable medical certainty whether the fall or the automobile accident caused the need for surgery, and that he had related the need for surgery to the fall based on the medical history provided to him by Ms. Nichols.
Given the conflicting testimony as to how the accident occurred, we cannot conclude that the trial court erred in deter *314 mining that Ms. Nichols suffered a work-li ^elated accident on February 4, 2012. Furthermore, the medical testimony supports a finding that Ms. Nichols suffered knee and shoulder strain/sprain which would have resolved if it had not been for the automobile accident of March 14, 2012. Accordingly we find no error in the workers’ compensation judge’s ruling granting indemnity and medical benefits from February 4, 2012 until February 10, 2012 when she was released to work without restrictions.
Dillard’s third and fourth assignments of error address the workers’ compensation judge’s rulings in granting a new trial without additional evidence. Dillard’s argues that the trial court erred in finding that the March 14, 2012 automobile accident was a separate compensable accident. It further alleges that the trial court erred in not finding that attendance at the Orpheus parade and ball and the car accident were not superseding intervening incidents. In addition, the trial court erred in overruling her previous determination regarding Ms. Nichols’ participation in the Orpheus activities when it was not raised by claimant.
“If an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident.” Buxton v. Iowa Police Department, 09-520 (La.10/20/09), 23 So.3d 275, citing Haughton v. Fireman’s Fund American Ins. Companies, 355 So.2d 927 (La.1978); Redmann v. Bridgefield Cas. Ins. Co., 11-651 (La.App. 5 Cir. 02/28/12), 88 So.3d 1087, 1095.
Under limited circumstances a disabling condition resulting after a non-work-related accident is compensable if (1) the employee suffered a previous work-related injury; (2) there was great likelihood that the worker would receive additional injuries because of the work-related injury; and (3) the subsequent accident which aggravated the work-related injury was foreseeable. Wilkerson v. %65 12City of New Orleans Fire Dep’t., 03-1550 (La.App. 4 Cir. 3/3/04), 871 So.2d 375, 378, unit denied, 04-1548 (La.10/1/04), 883 So.2d 992.[2]
However, a non-work-related automobile accident is ordinarily a separate and intervening cause, and not a natural or expected consequence of the original work-related injury. Employers Mut. Liability Ins. Co. v. Dixon, 425 So.2d 885 (La.1983). In Wilkerson, supra, claimant was injured in a work-related accident, and subsequently released to full duty. Thereafter, she was involved in a nonwork-related car accident which rendered her disabled. In affirming the judgment of the workers’ compensation court that found Ms. Wilkerson’s disability was not work-related and therefore not compensable, the court said that “The automobile accident that caused Ms. Wilkerson’s disabling injury was an *315 intervening and independent action, not a natural or expected consequence of her original work-related injury, and, accordingly, she is not entitled to workers’ compensation for injuries arising out of the second accident.” 871 So.2d at 380.
The same result is mandated here. Ms. Nichols had been released without restriction. Her subsequent automobile accident was not a natural or expected cause of her original accident. Buxton, supra; Dixon, supra. The fact that Ms. Nichols was on her way to a doctor’s appointment did not convert this separate and intervening cause into a work-related accident. See Theriot, supra, in which the court found that an automobile accident when claimant was returning home after having been released from hospitalization due to a work-related injury was a separate and intervening cause.
|iaMs. Nichols suggests that the automobile accident merely aggravated her previously incurred work-related injuries, and therefore Dillard’s is liable for continued benefits. This argument was rejected by the Louisiana Supreme Court in Buxton, supra, wherein the court said that “we reject claimant’s argument that proof of any aggravation of an on-the job-injury by a subsequent accident which is not job related is sufficient to make the employer liable for continued compensation benefits. If an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident.” Buxton v. Iowa Police Department, 09-520 (La.10/20/09), 23 So.3d 275, 278, citing Haughton v. Fireman’s Fund American Ins. Companies, 355 So.2d 927 (La.1978); Redmann v. Bridgefield Cas. Ins. Co., 11-651 (La.App. 5 Cir. 02/28/12), 88 So.3d 1087, 1095.
Finally, we conclude that the trial court erred in finding that Ms. Nichols’ participation in the Orpheus Parade and Ball was a compensable event. We note that there is no medical evidence in the record to show that Ms. Nichols was predisposed to further injury after she had been released to return to work. In addition, participation in a parade and/or ball is not an expected or foreseeable consequence of Ms. Nichols’ work-related accident.
Accordingly, we find that the trial court erred in granting Ms. Nichols’ motion for new trial and in ruling that participation in the Orpheus Parade and Ball and the motor vehicle accident caused compensable injuries.
In its last two assignments of error, Dillard’s argues that the trial court erred in finding that claimant was disabled at time of trial, and that the trial court erred in finding that she was entitled to continued medical benefits when testimony established that she was at maximum medical improvement. Because we find that 1¶ ¿Dillard’s is not responsible for any disability as a result of intervening automobile accident, we also conclude that Ms. Nichols is not entitled to continued indemnity and medical benefits.
We also consider that, when a claimant reaches maximum medical improvement and is released to return to work, TTD’s [temporary total disability payments] are no longer owed. This is because when the employee is released to return to work, albeit with restrictions, he is deemed to be able to engage in some self-employment or gainful occupation for wages as contemplated by La. R.S. 23:1221(1). Mason v. Auto Convoy, 27,444 (La.App. 2 Cir. 11/01/95), 662 So.2d 843, 847.
*316 According to the medical records introduced at trial, as well as Ms. Nichols’ testimony, Ms. Nichols had a long-standing diagnosis of bipolar disorder, ADHD, and anxiety, and was being treated by Charles Billings, M.D., a psychiatrist. In addition, Ms. Nichols also suffered from fibromyal-gia syndrome. The evidence showed that Ms. Nichols had reached maximum medical improvement with regard to her physical injuries suffered during the fall. Any inability to work is a result of Ms. Nichols’ psychological disorders and not because of her physical injuries. Furthermore, there is no medical testimony to suggest Ms. Nichols’ psychological condition was caused, or worsened, by the fall. To the contrary, the record clearly shows that Ms. Nichols suffered from these conditions pri- or to her work-related accident, and had collected Social Security Disability benefits on several occasions, and was collecting disability payments at the time of trial. Ms. Nichols testified that she had Medicare and Medicaid health insurance at the time of the work-related accident. In addition, Ms. Nichols had been released to work without restrictions after the fall, and her disabilities did not manifest themselves until after the intervening events of the Orpheus Parade and the automobile accident.
|1sWith no basis to conclude that Ms. Nichols’ ongoing disability at the time of trial was a result of her work-related accident, and not because of her pre-existing conditions of bipolar disorder, ADHD, and fibromyalgia, we find that the workers’ compensation court was manifestly erroneous in ruling that Ms. Nichols was entitled to continued temporary total disability payments and continued medical expenses.
CONCLUSION
For the above discussed reasons, the workers’ compensation court’s judgment granting the new trial and its judgment of June 11, 2014 finding the automobile accident to be compensable and finding that Ms. Nichols was totally disabled as a result and entitled to ongoing indemnity and medical benefits is reversed. The judgment of October 8, 2013, finding Ms. Nichols is entitled to indemnity and medical benefits from February 4, 2012 to February 10, 2012 is reinstated. Costs of this appeal are assessed to appellee.
Judgment of June 11, 2014 Reversed;
Judgment of October 8, 2013 Reinstated; Rendered.

. At trial, Dillard's attorney objected to the method in which counsel for Ms. Nichols conducted his direct exam of her, by use of leading questions. Counsel responded that "... claimant has serious mental and physical problems. She is a terrible historian. * * * Because of my client's mental problems, unless I’m allowed some latitude to do some leading, we will never get through all of her testimony in a day or two.” The parties then agreed to the entry of Ms. Nichols' uncoun-seled deposition, taken on June 11, 2012, subject to both parties right to examine and cross-examine Ms. Nichols.

. Subsequent accidents which are found to be compensable are foreseeable as a consequence of the original work-related accident. For example, in Thibodeaux v. Sunland Construction, 00-1472 (La.App. 3 Cir. 4/4/01), 782 So.2d 1203, claimant suffered a shoulder injury as a result of an on the job accident. Thereafter, he injured his back while exiting the bathtub when his shoulder gave out, causing him to fall. The back injury was found to be causally related to his shoulder injury, and therefore to his work-related accident. In Kelly v. New Orleans, 414 So.2d 770 (La.1982), the employee dislocated his shoulder twice in work-related accidents. Thereafter, he again dislocated his shoulder while swimming. The medical evidence showed that Kelly's first two shoulder injuries predisposed him to the swimming injury, and therefore the swimming injury was compensable.