BRIAN CASKEY

VERSUS

INTRALOX, INC. AND TRAVELERS

NO. 21-CA-165

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION
DISTRICT 7
STATE OF LOUISIANA
NO. 11-3822
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

January 19, 2022

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Hans J. Liljeberg

**AFFIRMED**
**HJL**
**SMC**
**JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
BRIAN CASKEY
    Charles R. Davoli

COUNSEL FOR DEFENDANT/APPELLEE,
INTRALOX, LLC AND TRAVELERS PROPERTY CASUALTY COMPANY OF
AMERICA
    Joseph B. Guilbeau

**LILJEBERG, J.**

Claimant seeks review of the workers' compensation judge's October 26, 2020 judgment, finding that he failed to prove that he had a work-related accident, occupational disease, injury, or disability, and dismissing his claim for workers' compensation benefits with prejudice. Defendants have answered the appeal, arguing that the workers' compensation judge erred by failing to award costs to defendants. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 23, 2011, claimant, Brian Caskey, filed a disputed claim for compensation against his employer, Intralox, L.L.C. ("Intralox"), and its insurer, Travelers Property and Casualty Company of America, seeking indemnity and medical benefits. In his claim, Mr. Caskey alleged that while in the course and scope of his employment at Intralox, he was exposed to noxious fumes due to his work area not being properly ventilated, which caused him to become incapacitated. He alleged that there was a work-related accident on October 21, 2010, and also that he suffered from an occupational disease as a result of his work at Intralox, causing him to be disabled.

The matter came before the workers' compensation court for trial on November 15-16, 2017, January 8-9, 2018, and January 29, 2018. At the beginning of trial, the parties stipulated that Mr. Caskey was employed by Intralox from February 8, 2001, until his resignation on April 13, 2011. His last day of work as a mold maker was November 5, 2010 and his last day of modified duty work for Intralox was January 14, 2011. The parties also stipulated to his average weekly wage and weekly compensation rate.

Brian Caskey was employed by Intralox from February 2001 to January 2011 as a skilled machinist and senior mold maker. Mr. Caskey's work duties included grinding and cutting metals and metal alloys to produce metal molds for

21-CA-165                                   1

the manufacture of machine parts and tools. He was also responsible for the daily operation, maintenance, and cleaning of several machines used in the grinding and mill facilities, and he had to evaluate and procure a variety of metal working fluids ("MWFs") used in the mold-making process. Mr. Caskey alleges that while he worked at Intralox, he was exposed to "various metals and stainless steel alloys, chemical coolants, additives, solvents, corrosion and rust inhibitors, degreasing and cleaning agents, and other volatile organic compounds," either by direct contact or by breathing in the MWFs and aerosol mists of vapors and fumes in the air when processed in and around three large grinding machines that were vented directly into his work area.

In October 2010, Mr. Caskey complained to his supervisors and co-workers that there were irritating odors in the grinding room, which caused him to experience severe breathing difficulties with "coughing fits," wheezing, fainting spells, headaches, and balance and cognitive difficulties. According to Mr. Caskey, on October 21, 2010, he experienced increased coughing and difficulty breathing, so he contacted Gloria Bowman, the Safety Manager at Intralox, to report his complaints about the grinding room. As a result of his complaints, Intralox contacted an industrial hygienist, Christopher Robertson, to perform an industrial hygiene investigation including air quality testing. Mr. Caskey emailed Ms. Bowman again on October 26, 2010, asking if there was anything he could use to help with his breathing. Ms. Bowman responded that Mr. Caskey should stay home if he felt unable to work, noting that Mr. Robertson was scheduled to perform air quality testing the next day, October 27, 2010.

On November 1, 2010, Mr. Caskey emailed Ms. Bowman asking for Intralox to send him to a doctor. Intralox referred him to Dr. Douglas Swift, who examined Mr. Caskey, ordered testing, and recommended that Mr. Caskey avoid the grinding room, take Mucinex for congestion, and return to work on restricted duty. Mr.

Caskey also saw his internal medicine physician, Dr. Maury Drummond, for the same complaints around this time. The last day Mr. Caskey worked in the grinding room was November 5, 2010.

Although Intralox offered modified, temporary work in a warehouse to Mr. Caskey in order to accommodate Dr. Swift's order for restricted duty, Mr. Caskey testified that he continued to have medical problems. Dr. Drummond wrote a work excuse to Intralox dated January 12, 2011, indicating that Mr. Caskey "should not be put back into a work environment that exposes him to the previous chemicals that are currently under suspicion for causing reactive airway disease in him."

On February 9, 2011, Intralox provided Mr. Caskey with a letter noting that Ms. Bowman had advised him that he needed to return to work on March 15, 2011, after the expiration of his short-term disability leave for an unrelated foot surgery, because testing did not reveal anything in his work area that could adversely affect his safety or ability to safely perform his job. The letter noted that Intralox had not received any test results from medical providers or third parties establishing that he had a specific medical condition that could be aggravated by working in the mold shop area. Intralox acknowledged receipt of Dr. Drummond's January 12, 2011 work excuse, but indicated that it had received no test results or other information to corroborate Dr. Drummond's opinion and it would need such information prior to March 14, 2011.

Mr. Caskey testified that at this time, he was still having breathing reactivity to "perfumes, deodorants, fabric softeners," along with headaches and disorientation. Mr. Caskey testified that he resigned from his employment at Intralox on April 13, 2011, due to concerns for his health and safety, and he continued to seek treatment for his symptoms. Mr. Caskey stated that he found other employment after resigning from Intralox, but could not continue working due to breathing and respiratory problems.

21-CA-165                                          3

At trial, Gloria Bowman testified that she was the Safety Manager at Intralox for 17½ years, which included the entire time Mr. Caskey was employed by Intralox. According to Ms. Bowman, Mr. Caskey complained about work conditions and symptoms continually for the entire time he was employed by Intralox. In 2009, air quality testing was performed in the grinding room, and the testing revealed no deficiencies in the air quality. She stated that the machine filtering system in the grinding room was "catching all the particulate" because the total particulate for the two volatiles that were monitored over a two-week period was below a detectable limit. Ms. Bowman stated that Mr. Caskey never reported a particular exposure event in October of 2010, but he complained about the air quality so testing was again performed in the grinding room. The coolant and air quality testing was performed with all of the machines on high for a "worst-case" scenario. There was no appreciable change in the environment of the grinding room between the 2009 testing and the 2010 testing.

Christopher Robertson testified that he is a certified industrial hygienist. He explained that an industrial hygienist samples things in the air that can potentially harm someone, measures it and then controls it. He performed air quality testing at Intralox on October 28, 2010, and he had done this type of testing "tens of thousands" of times. Mr. Robertson testified that the facility at Intralox is one of the cleanest facilities he has been to. Mr. Robertson spoke with Mr. Caskey and other workers at Intralox before deciding on his testing protocol. Mr. Robertson decided to run all of the machines "full blast," which is not normal, and put a sampler at the exhaust of each machine and on Mr. Caskey's desk in order to create an absolute worst-case scenario. The concentration of the chemicals he monitored did not exceed the permissible exposure limits, so he did not recommend any respiratory protection. Mr. Robertson testified that the detection levels of mold and bacteria were "not even close" to the danger levels recognized

by OSHA. Based on the testing, Mr. Robertson concluded that the environment where Mr. Caskey worked was a safe working environment, and he did not recommend that any controls be put in place.

Shane Jackson testified that he worked with Mr. Caskey in the grinding room at Intralox from 2002 through 2010. According to Mr. Jackson, during the time they worked together, Mr. Caskey generally complained about everything, including the temperature in the room, the tools they had to work with, the horsepower of the machine, and the types of wheels they had. Mr. Jackson stated that there were mist collectors on every machine, which act like a filter, and the air in the grinding room was not misty. He stated that the grinding room has positive air pressure, pumping in more air than it needs, in order to keep contaminants from getting in. Mr. Jackson did not have any hesitation about working in the grinding room.

Dr. Maury Drummond, an internal medicine physician, treated Mr. Caskey from June of 2010 to March of 2015. On November 4, 2010, Mr. Caskey reported that he was having difficulty breathing because he was exposed to contaminants at his job. Dr. Drummond referred Mr. Caskey to a pulmonologist, Dr. Wesley Cook, for his complaints of shortness of breath, but Dr. Cook did not find any indication that he had asthma. Mr. Caskey complained to Dr. Drummond of coughing, tightness in the chest, difficulty breathing, and wheezing, but his examination was normal. Dr. Drummond made presumptive diagnoses based on Mr. Caskey's subjective complaints, and wrote a work excuse to Intralox indicating that Mr. Caskey should not be put back into a work environment that exposes him to chemicals that are under suspicion for causing reactive airway disease in him. Dr. Drummond testified in his deposition that he wrote the work excuse to Intralox to accommodate Mr. Caskey's request, but he believed there was no evidence of physical injury. According to Dr. Drummond, Mr. Caskey underwent several tests

and the results were normal, which was not consistent with Mr. Caskey's complaints. Dr. Drummond testified that Mr. Caskey was fixated on finding something wrong with him related to an exposure, but he could not say with any degree of medical certainty that Mr. Caskey had a reaction to anything he was exposed to at work, other than in his own mind.

Dr. Douglas Swift testified at trial and was accepted as an expert in occupational medicine. Dr. Swift is trained in toxicology and treats people who claim to have been exposed to chemicals in the workplace. In early November of 2010, Dr. Swift examined Mr. Caskey, who reported that he had a history of chemical exposure. Dr. Swift testified that an examination of Mr. Caskey revealed no evidence of any upper airway abnormalities and his lungs were clear. Nevertheless, Dr. Swift testified that he took Mr. Caskey's complaints at "face value" and diagnosed him with an "acute upper respiratory disorder from suspected exposure to mold and bacteria" and, as a precaution, restricted him from work. He then referred Mr. Caskey to Dr. Kenneth Smith, a pulmonologist, for a full set of pulmonary tests to determine if Mr. Caskey's symptoms were consistent with asthma. After reviewing the test results, Dr. Swift found that Mr. Caskey did not have a workplace illness and referred him back to his internist, Dr. Drummond. He also released Mr. Caskey to work at modified duty. He explained that there was no medical basis for any restrictions, but he placed restrictions on Mr. Caskey's return to work as a precaution.

Dr. Swift further testified that he went to Mr. Caskey's workplace at Intralox, and he found it to be clean, like a hospital laboratory, with not much odor, fumes, or vapors, contrary to what Mr. Caskey had described. He stated that even if there had been odors, detecting an odor does not necessarily mean there is a toxic effect or that it is over the exposure limit. Dr. Swift stated that Ms. Bowman shared studies of the air quality in the workplace with him, which showed

extremely low concentrations of various metals and microbial fungal elements. Dr. Swift testified that based on the air quality testing and his examination of Mr. Caskey, he did not associate Mr. Caskey's symptoms with his work.

Additionally, Dr. Swift testified that he is familiar with Dr. William Rea and read his deposition. Dr. Swift testified that he did not find any objective evidence in his review of Mr. Caskey's records to support Dr. Rea's finding that Mr. Caskey had toxic encephalopathy. He opined that Dr. Rea's reasoning is circular because he found Mr. Caskey had toxic encephalopathy based on Dr. Didriksen's testing, but Dr. Didriksen found evidence of toxic encephalopathy based on Dr. Rea's diagnosis of toxic encephalopathy.

When asked about Dr. Meggs' diagnosis of irritant rhinitis, Dr. Swift noted that Dr. Meggs did not see Mr. Caskey in person. He also stated that if Mr. Caskey is disabled by irritant rhinitis, it would be the first case he has seen in 37 years of someone being disabled due to irritant rhinitis. Dr. Swift disagreed with Dr. Meggs' diagnosis of cough variant asthma, stating that he did not have a pulmonary function study that showed any airway obstruction and he did not know of any case of asthma without airway obstruction. Dr. Swift also noted that in Dr. Meggs' report, he did not provide any discussion or analysis regarding what dangerous and unacceptable levels of chemicals Mr. Caskey was exposed to. He stated that even if Mr. Caskey was exposed to chemicals at work, this finding would be meaningless without information on the circumstances of the exposure, ventilation characteristics, or air levels of substances. He also stated that he did not explore causation, because Mr. Caskey did not have an illness to study.

Dr. Kenneth Smith, a pulmonologist, testified in his deposition that Dr. Swift referred Mr. Caskey to him to assess the presence or absence of pulmonary impairment. He first saw Mr. Caskey on November 16, 2010, when he complained of a cough and chest tightness. Mr. Caskey reported to him that on October 21,

2010, he became nauseated, dizzy, lightheaded, and had coughing fits while at work. Dr. Smith ordered various tests, including a methacholine challenge test and pulmonary function studies. Based on the test results, Dr. Smith concluded that Mr. Caskey had no physiological pulmonary impairment to explain his symptoms. He found no reason to restrict Mr. Caskey's exposures or activities in any way. When asked about a possible explanation for Mr. Caskey's symptoms, Dr. Smith stated that it could be somatization, which he explained as having external symptoms without any physiological bases, due to fear, or anxiety or stress.

Dr. Judd Shellito testified in his deposition that he is an internist and is board certified in pulmonology. He testified that he saw Mr. Caskey on May 9, 2011 and October 24, 2011, to determine whether there was evidence that Mr. Caskey had a pulmonary condition and if so, whether that pulmonary condition was related to occupational exposure. Dr. Shellito ordered several tests for Mr. Caskey, including a pulmonary function test which yielded normal results and a methacholine challenge test which showed no evidence of an asthmatic condition or other abnormality. Based on the testing, Dr. Shellito testified that Mr. Caskey did not have a lung condition or disease that needed treatment, and he did not find that Mr. Caskey had any pulmonary problem that would explain his symptoms. He found no medical basis to restrict Mr. Caskey's activities.

Dr. William George testified via deposition that he is a pharmacologist and toxicologist. After reviewing various documents, depositions, reports, and medical records, Dr. George found that there was no credible evidence that Mr. Caskey had been exposed to toxic levels of any specific chemical in the workplace. He opined that while Dr. Rea found Mr. Caskey was exposed to toxic levels of chemical substances, the methodology Dr. Rea used to reach his conclusion of a chemical-induced injury does not satisfy the minimal requirements of causation analysis.

Dr. William Rea, a thoracic and cardiovascular surgeon who specializes in environmental medicine, testified via deposition that he examined Mr. Caskey on February 6, 2012, and issued reports in October 2012, February 2013, and October 2014. According to Dr. Rea, Mr. Caskey reported that in October of 2010, he began to experience headaches, nausea, disorientation, and shortness of breath. Mr. Caskey told him that he was frequently exposed to chemicals at work and had increased sensitivity to odors which got progressively worse. Dr. Rea referred Mr. Caskey to Dr. Didriksen for neuropsychological testing. Based on his review of Mr. Caskey's medical records, history, and test results, Dr. Rea diagnosed him with toxic effect from solvents and toxic encephalopathy from the residual effects of neurotoxicity to chemicals from his exposures while working for Intralox. Dr. Rea found that Mr. Caskey's blood and urine tests revealed elevated levels of several toxins, and allergen skin testing revealed sensitivity to several chemicals. He also found that breath analysis revealed increased levels of different chemicals used at Intralox. Dr. Rea indicated that it was his medical opinion that Mr. Caskey was totally disabled by his neurotoxicity and sensitivities, and he could not engage in any type of sustained work or work-like activities. He indicated that in all medical probability, Mr. Caskey's incapacitation was the result of his exposure to chemicals and mycotoxins in the workplace.

Dr. Nancy Didriksen, a neuropsychologist, testified in her deposition that Dr. Rea referred Mr. Caskey to her for neuropsychological testing. Dr. Didriksen performed a neuropsychological evaluation of Mr. Caskey on February 10, 2012, and diagnosed him with a cognitive disorder, adjustment disorder, and chemical/environmental sensitivity. She also found him to be totally disabled. Dr. Didriksen admitted that she did not have any information regarding the duration or concentration of any substances to which Mr. Caskey was exposed. On July 12, 2016, Dr. Didriksen provided a supplemental report, in which she stated that Mr.

Caskey unequivocally does not have Somatic Symptom Disorder (formerly Somatization disorder), Illness Anxiety Disorder, or Conversion Disorder. Dr. Didriksen saw Mr. Caskey again on November 22, 2016, and she issued a report indicating he has a "Mild Neurocognitive Disorder Due to Another Medical Condition (toxic/neurotoxic exposure, chemical sensitivities)." Dr. Didriksen believes that Mr. Caskey has chemical and environmental sensitivities that preclude him from working.

Dr. William Meggs testified that he is board certified in internal medicine, emergency medicine, allergy and clinical immunology, and medical toxicology, and he specializes in the diagnosis and treatment of people exposed to toxic substances. Dr. Meggs did not examine Mr. Caskey, but he reviewed medical records, depositions, reports, air quality studies, and other documents. Based on his review, Dr. Meggs opined that Mr. Caskey is disabled due to irritant rhinitis and cough variant asthma. He testified that Mr. Caskey was exposed to dangerous and unacceptable levels of a complex mixture of grinding dust and fumes and materials that are respiratory irritants. He stated that these respiratory irritants changed his airway causing him to have increased intolerance to respiratory irritants, as well as associated symptoms such as fatigue, headaches, cognitive dysfunction, and sleep disturbances. Dr. Meggs testified that Mr. Caskey's symptoms are a direct result of his employment at Intralox, that he can no longer work in that profession, and that it would be difficult for him to find gainful employment anywhere, due to his hyperreactivity to respiratory irritants. He believes he had a chronic exposure that built up and had a turn for the worse in October of 2010. Dr. Meggs opined that the proper diagnostic test to assess the extent of injury from respiratory irritant chemical exposure is a bronchoscopic biopsy, not a pulmonary function test or metacholine challenge.

21-CA-165                                     10

Dr. Rex Houser testified via deposition that he is a neurologist who typically treats people with brain injuries. He stated that on October 30, 2015, he gave Mr. Caskey a detailed neurological examination, and he issued a report with his findings on November 3, 2015. Mr. Caskey had a perfect score on the cognitive testing, which showed that his cognitive function appeared normal. Dr. Houser also performed a Romberg test, and he found that Mr. Caskey had a "very exaggerated" response to the test. According to Dr. Houser, no problems were detected in the Romberg test, though Mr. Caskey flailed his arms and did other things to make him think he had a problem. He stated, "what you see very frequently where patients who have an issue with secondary gains, they tend to try and overplay the test, and that's what was my opinion of Mr. Caskey." Dr. Houser stated that he had no evidence of any neurologic injury to Mr. Caskey. Although Dr. Rea diagnosed Mr. Caskey with toxic encephalopathy, Dr. Houser believes a neurologist should be involved if there is a diagnosis of a brain injury, whether its neurotoxicity or toxic encephalopathy. He believes that Dr. Rea's methods and conclusions are far outside the standards of evaluation and care in neurology and do not validate any claim of neurotoxicity due to chemical exposure. From a neurological standpoint, Dr. Houser does not believe there is any reason to find Mr. Caskey disabled or to restrict his activities.

Dr. Kevin Bianchini testified at trial and was accepted as an expert in neuropsychology and clinical psychology. He testified that he reviewed Mr. Caskey's medical records, and the depositions of Dr. Houser, Dr. Meggs, Dr. Drummond, Dr. Didriksen, Dr. Rea, Dr. George, and Dr. Smith. He also interviewed Mr. Caskey for about an hour and a half, and had a technician administer neuropsychological tests. Dr. Bianchini diagnosed Mr. Caskey with somatoform disorder and adjustment disorder. He explained that somatoform disorder is when the cause or source of physical symptoms is psychological, not

physical. He explained that adjustment disorder is when someone has trouble dealing with something emotionally and moving forward with life. Dr. Bianchini does not believe Mr. Caskey has any cognitive impairment from neurotoxicity or any psychological or mental disability that prevents him from working. He also opined that Mr. Caskey's cognitive and psychological problems were not caused by any work exposure.

The first two days of trial were on November 15-16, 2017, and then trial was continued to January 8, 2018. During this time, on December 18, 2017, Dr. Charles Hamel, an otolaryngologist, performed a "right nasal (bronchoscopic) biopsy" on Mr. Caskey. In a letter dated January 3, 2018, Dr. Hamel indicated that he reviewed the pathology report from the biopsy and that the "[f]indings were consistent with history of toxic exposure and current/past symptomology—bleeding, itching, infection."

At the conclusion of trial on January 29, 2018, the workers' compensation judge granted Intralox's request to hold the record open to allow them to retain an expert to rebut the nasal biopsy report. Thereafter, defendant submitted reports from Dr. Justin Bishop and Dr. Ashleigh Halderman. Dr. Justin Bishop, a pathologist, reviewed the pathology report and records regarding Mr. Caskey's nasal biopsy and found that the results were medically insignificant and did not support any conclusions as to condition, causation, treatment, or disability. In his report, Dr. Bishop stated that the biopsy resulted in very common, non-specific findings that do not point to any particular medical condition or indicate exposure to any particular toxin or irritant.

Dr. Halderman, an otolaryngologist, reviewed various medical records, reports, depositions, and the results of Mr. Caskey's nasal biopsy. In her report, Dr. Halderman stated that the biopsy findings were medically and clinically insignificant in terms of providing a basis to support a finding that Mr. Caskey

sustained an injurious or causative exposure while working at Intralox. She further stated that "the biopsy in no way can support a claim of disability as it is so innocuous and the specific cause of the findings described on the biopsy could be attributed to many other potential causes." She also noted that Dr. Meggs has diagnosed irritant rhinitis caused by exposure to chemicals at Intralox, but nerve cell proliferation is essential to the development of irritant rhinitis and Mr. Caskey's biopsy results did not show nerve cell proliferation.

On November 13, 2018, a telephone status conference was held during which the court stayed the proceedings in order to "locate [a] specialist for complex medical issue." However, according to the workers' compensation judge, she was unable to locate a specialist who was willing to perform an independent medical examination ("IME") and assist her with the intricacies of this case. Accordingly, the workers' compensation judge indicated that she would rely on her own review of the medical records, testimony, expert reports, and post-trial memoranda and render a judgment.

On October 26, 2020, the workers' compensation court rendered a judgment in favor of Intralox, finding that Mr. Caskey failed to meet his burden of proving that he had a work-related accident, that he suffers from an occupational disease, or that he suffered injuries or is disabled as a result of a work-related accident or occupational disease. The court dismissed Mr. Caskey's claims against Intralox, with prejudice. Mr. Caskey appeals from this judgment, and Intralox and Travelers have answered the appeal seeking costs.

## LAW AND DISCUSSION

In his first assignment of error, Mr. Caskey argues that the workers' compensation judge erred by finding he failed to meet his burden of proving the occurrence of an occupational "accident" or any related injury and disability while in the course and scope of his employment with Intralox.

The factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. *Winford v. Conerly Corp.*, 04-1278 (La. 3/11/05), 897 So.2d 560, 569; *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. When applying the manifest error or clearly wrong standard, the court must determine whether the fact finder's conclusion was reasonable, not whether it was right or wrong. *Banks*, 696 So.2d at 556; *Stobart v. State through Department of Trans. & Dev.*, 617 So.2d 880, 882 (La. 1993).

The employee in a workers' compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. *Marange v. Custom Metal Fabricators, Inc.*, 11-2678 (La. 7/2/12), 93 So.3d 1253, 1257; *Dillard's, Inc. v. Nichols*, 14-740 (La. App. 5 Cir. 5/28/15), 171 So. 3d 307, 310, *writ denied*, 15-1515 (La. 10/23/15), 179 So.3d 606. The Workers' Compensation Act defines an accident as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

Mr. Caskey contends that beginning in September 2010 through October 2010, he complained of obnoxious and irritating odors in the grinding room, which culminated in him experiencing severe breathing difficulties, severe coughing and wheezing, headaches, as well as cognitive and balance issues. He asserts that this incident qualifies as an "accident" due to the sudden onset of these symptoms. Mr. Caskey also notes that he immediately sought medical attention and that Intralox's choice of medical provider, Dr. Swift, had the initial impression that Mr. Caskey had an "acute upper respiratory disorder from suspected exposure to mold and bacteria."

After review, we find no manifest error in the workers' compensation court's finding that Mr. Caskey did not prove he had a work-related accident. Mr. Caskey's version of events does not meet the definition of an "accident" under La. R.S. 23:1021(1). Mr. Caskey testified that he complained of irritating odors in the grinding room from September 2010 through late October 2010. Although Mr. Caskey testified that on October 21, 2010, he suffered from increased coughing and difficulty breathing, the evidence does not show that there was an "actual, identifiable, precipitous event happening suddenly or violently." An employee is required to "identify the event marking the time when one can identify an injury." *Bourgeois v. Seabright Ins. Co.*, 12-834 (La. App. 5 Cir. 4/10/13), 115 So.3d 50, 53; *Hall v. J.E. Merit Constructors, Inc.*, 02-2648 (La. App. 1 Cir. 11/7/03), 861 So.2d 224, 228.

The air quality testing in October 2010 did not show that there were concentrations of chemicals that exceeded the permissible exposure limits, and the evidence did not show that a particular event occurred which could be considered a work-related accident. Even accepting Mr. Caskey's testimony as true, he failed to meet his burden of proving a work-related accident under La. R.S. 23:1021(1) by a preponderance of the evidence. Accordingly, Mr. Caskey's first assignment of error is without merit.

In his second assignment of error, Mr. Caskey asserts that the workers' compensation judge committed a procedural and legal error by staying the proceedings to procure an IME to reconcile conflicting expert opinions, but then ruling anyway without the IME. He complains that once the workers' compensation judge determined that an IME was necessary, she was required to obtain an IME in order to reasonably and equitably consider Mr. Caskey's objective evidence of injury.

The record reflects that a telephone status conference was held on November 13, 2018, during which the court stayed the proceedings in order to "locate [a] specialist for complex medical issue." However, on May 7, 2019, the workers' compensation judge notified the parties via email that she was unable to locate a doctor in a specialty that would assist her with the intricacies of the case. In the email, the judge also set briefing deadlines and indicated that she would rely on her own review of the medical records, testimony, existing expert reports, and post-trial memoranda. Thereafter, on October 26, 2020, the workers' compensation judge rendered a judgment in favor of Intralox, finding that Mr. Caskey did not meet his burden of proof and dismissing his claim with prejudice.

In order for an employee to receive workers' compensation benefits under the Workers' Compensation Act, he has the burden of proving that he suffered personal injury by accident arising out of and in the course and scope of his employment or that he contracted an occupational disease. La. R.S. 23:1031(A); La. R.S. 23:1031.1(A); *LeCompte v. St. Tammany Parish School Board*, 20-333 (La. App. 1 Cir. 4/26/21), 324 So.3d 1066, 1068, *writ denied*, 21-744 (La. 10/5/21), 325 So.3d 358. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers' compensation judge. *Bradford v. Webster Parish Police Jury*, 48,981 (La. App. 2 Cir. 5/14/14), 139 So.3d 39, 41.

Although the law permits a workers' compensation judge to appoint a physician to perform an independent medical examination, it does not require the judge to accept his conclusions. *Campbell v. Gootee Construction Co.*, 99-913 (La. App. 5 Cir. 1/12/00), 756 So.2d 449, 453; *Gabriel v. Delta Air Lines, Inc.*, 12-428 (La. App. 5 Cir. 1/30/13), 106 So.3d 1285, 1292, *writ denied*, 13-917 (La. 5/31/13), 118 So.3d 399. It is the duty of the workers' compensation judge to

decide the merits of the controversy as equitably as possible. *See* La. R.S. 23:1317(A).

In the present case, the record reflects that the workers' compensation judge indicated she would "locate [a] specialist for complex medical issue." However, she subsequently informed the parties that she was unable to locate a specialist who would assist in this matter. Therefore, the judge was required to fulfill her duty as the factfinder and to decide if Mr. Caskey met his burden of proof, without the benefit of an additional medical opinion. The record contains testimony from numerous doctors who provided their opinions as to whether or not Mr. Caskey suffers from an occupational disease or other work-related disability. We find no error in the workers' compensation court's decision to render a judgment without appointing an additional doctor to perform an IME. This assignment of error is without merit.

In his third assignment of error, Mr. Caskey argues that the workers' compensation judge erred by concluding there was insufficient evidence to prove his claims of an "occupational disease" while employed at Intralox. He asserts that a preponderance of the evidence showed that due to the nature of his work at Intralox, he was routinely and continuously exposed to potentially hazardous materials and chemical substances. Mr. Caskey further asserts that Dr. Rea's diagnosis of chronic and multiple chemical sensitivity and neurotoxicity and Dr. Meggs' finding of disability due to irritant rhinitis or cough variant asthma were more reasonable, reliable, probable, and scientifically supported than the other doctors' opinions.

An occupational disease is defined in La. R.S. 23:1031.1(B) as a "disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." The claimant asserting that he suffers from an

occupational disease must prove, by a preponderance of the evidence, a disability related to an employment-related disease, that it was contracted during the course of employment, and that it is the result of the work performed. *Johnson v. Manitowoc Co.*, 52,264 (La. App. 2 Cir. 9/26/18), 256 So.3d 463, 468, *writ denied*, 18-1759 (La. 1/8/19), 260 So.3d 592.

To determine whether an illness constitutes an occupational disease within the Workers' Compensation Act, courts must look at the employee's work-related duties and the nature of his employment to determine whether a disease is "due to causes and conditions characteristic of and peculiar to" the employee's particular occupation. *Arrant v. Graphic Packaging International, Inc.*, 13-2878, 13-2981 (La. 5/5/15), 169 So.3d 296, 309. Therefore, an occupational disease is one in which there is a demonstrated causal link between the particular disease or illness and the occupation. *Id.*; *Lyle v. Brock Services, L.L.C.*, 18-50 (La. App. 5 Cir. 7/31/18), 252 So.3d 1010, 1015. A workers' compensation claimant will fail to prove a causal link between his disease and his work-related duties if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused the disease. *Johnson*, 256 So.3d at 468; La. R.S. 23:1031.1(B).

The record shows that the medical experts provided different diagnoses for Mr. Caskey and there was no agreement among the experts that Mr. Caskey suffers from a specific disease or from any disease. In his appellate brief, Mr. Caskey notes that this case involves a dispute between medical experts as to whether Mr. Caskey is disabled from an occupational disease. When the testimony of expert witnesses differs, it is the responsibility of the trier of fact to determine which evidence is most credible. *Delgado v. Barriere Const. Co., Inc.*, 98-741 (La. App. 5 Cir. 1/26/99), 726 So.2d 489, 491. The workers' compensation judge is granted considerable discretion in evaluating expert testimony, and her decision to

accept the testimony of one expert over the conflicting testimony of another expert cannot be manifestly erroneous. *Id.*; *Connolly v. Seeley Service Const.*, 97-1620 (La. App. 1 Cir. 5/15/98), 712 So. 2d 636, 640.

Dr. Rea testified that he examined Mr. Caskey on February 6, 2012, and based on his examination, history, and test results, he found Mr. Caskey was totally disabled by neurotoxicity and sensitivities due to exposure to chemicals and mycotoxins in the workplace. Dr. Meggs did not examine Mr. Caskey but based on his review of Mr. Caskey's medical records, various documents, and depositions, he found that Mr. Caskey was disabled due to irritant rhinitis caused by respiratory irritants he was exposed to while working at Intralox. Dr. Didriksen performed neuropsychological testing and also found Mr. Caskey was totally disabled. Although Dr. Rea, Dr. Meggs, and Dr. Didriksen found that Mr. Caskey was disabled due to an occupational disease, several other medical experts disagreed and found that Mr. Caskey did not suffer from an occupational disease or other disability.

Dr. Drummond treated Mr. Caskey from June of 2010, while he was still working at Intralox, until March of 2015. He found no objective medical evidence to support Mr. Caskey's claim that he suffers from a disability or had a reaction to anything he was exposed to at work. Dr. Swift examined Mr. Caskey in November 2010, and while he initially placed restrictions on Mr. Caskey's work, he testified that he did so only as a precaution. He testified that based on the air quality testing and examination of Mr. Caskey, he did not associate Mr. Caskey's symptoms with his work and ruled out any workplace-related illness. Dr. Smith testified that he examined Mr. Caskey and, based on the results of various tests, he concluded that Mr. Caskey had no physiological pulmonary impairment. He stated that somatization was a possible explanation for Mr. Caskey's symptoms. Dr. Shellito examined Mr. Caskey on May 9, 2011 and October 24, 2011, and ordered several

tests. Based on the test results, he found that Mr. Caskey did not have a lung condition or disease that needed treatment or any pulmonary problem that would explain his symptoms. Dr. George testified that he reviewed various documents and depositions and that there was no credible evidence that Mr. Caskey had been exposed to toxic levels of any specific chemical in the workplace. Dr. Houser gave Mr. Caskey a neurological examination on October 30, 2015, and he found Mr. Caskey's response to the Romberg test was very exaggerated. He found that from a neurological standpoint, Mr. Caskey was not disabled and there was no reason to restrict his activities. Finally, Dr. Bianchini testified that he interviewed Mr. Caskey, reviewed his medical records and several depositions, and had neuropsychological tests administered. Based on the testing, records, and other documents, Dr. Bianchini diagnosed Mr. Caskey with somatoform disorder and adjustment disorder.

Additionally, although Dr. Hamel's report indicated that the results of Mr. Caskey's right nasal biopsy were consistent with toxic exposure, both Dr. Bishop and Dr. Halderman found that the biopsy results were medically insignificant and did not provide a basis for finding that Mr. Caskey sustained an injurious or causative exposure while working at Intralox or that he was disabled.

Faced with conflicting testimony from several medical experts, the workers' compensation judge had the duty to evaluate the experts' testimony and to assess their credibility. After considering the testimony and evidence, the workers' compensation judge found that Mr. Caskey did not meet his burden of proving that he is disabled or suffers from an occupational disease, as defined in La. R.S. 23:1031.1, as a result of his work at Intralox. Based on the testimony and evidence presented, we find no manifest error in the workers' compensation court's ruling. Accordingly, this assignment of error is without merit.

In their answer to appeal, Intralox and Travelers argue that while the

workers' compensation court was correct to deny Mr. Caskey's claim for workers' compensation benefits, the court erred by failing to assess all costs against claimant.

Under La. R.S. 23:1317(B), the question of awarding costs lies within the sound discretion of the workers' compensation judge, as it does with the district court judges under the general civil provisions. *Harris v. City of Bastrop*, 49,534 (La. App. 2 Cir. 1/14/15), 161 So.3d 948, 957; *Boleware v. City of Bogalusa*, 01-1014 (La. App. 1 Cir. 12/20/02), 837 So.2d 71, 75. After review of the record before us, we cannot say that the workers' compensation court abused its discretion by failing to assess costs against claimant.

**<u>DECREE</u>**

For the foregoing reasons, we affirm the workers' compensation judge's October 26, 2020 judgment in favor of defendants, dismissing claimant's case with prejudice.

<strong><u>AFFIRMED</u></strong>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JANUARY 19, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-CA-165**

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
CHARLES R. DAVOLI (APPELLANT)          JOSEPH B. GUILBEAU (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED